745 So.2d 188 (1999)
Cassundra W. MAYO
v.
MUNICIPAL POLICE BOARD OF REVIEW, Louisiana Department of Public Safety and Corrections, State of Louisiana
No. 98 CA 1864.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
W. Steven Mannear, Baton Rouge, for Plaintiff/Appellee, Cassundra W. Mayo.
*189 Willie E. Broome, Michele Nuschler, Baton Rouge, for Defendants/Appellants, Municipal Police Board of Review, La. Dept. of Public Safety & Corrections, State of Louisiana.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
This case involves a request by plaintiff, a police communications officer for the Shreveport Police Department, for supplemental pay from the State of Louisiana pursuant to LSA-R.S. 33:2218.2. Defendant, the Municipal Police Board of Review, Louisiana Department of Public Safety and Corrections, State of Louisiana (the Board), denied plaintiff's request. The district court reversed the Board's decision and ruled that plaintiff was entitled to state supplemental pay. The Board appealed, and we affirm the decision of the district court.

BACKGROUND
Plaintiff, Cassundra W. Mayo, was hired by the Shreveport Police Department as a police communications officer (PCO) in November 1990.[1] She immediately entered the Shreveport Regional Police Academy to obtain certification from the Peace Officer Standards & Training Council (POST). On February 27, 1991, after completing a grueling and demanding training program, Mayo officially became POST-certified. Mayo participated in the POST program because she had been led to believe that upon receiving POST certification, she would be entitled to receive state supplemental pay. Mayo was also commissioned as a PCO. As a PCO, Mayo had the limited power to arrest within the confines of the communications center. She was also able to testify in court. However, she could not bear arms inside the communications center, nor was she allowed to bear arms while off-duty.
The City of Shreveport (the City) employed about forty-four PCOs. About half of these PCOs drew supplemental pay because they were receiving supplemental pay before LSA-R.S. 33:2218.2 was amended to require POST certification. See 1986 La. Acts No. 657. After this amendment, the City raised the base pay of those PCOs who were not receiving supplemental pay to an amount equal to the salary of those PCOs who were receiving state supplemental pay. However, when the amount of state supplemental pay was raised in 1996 from $260.00 per month to $278.00 per month,[2] the City did not raise the base pay of those PCOs who did not receive state supplemental pay to reflect the statutory increase in the supplemental pay.[3] This apparently led to Mayo's discovery in the fall of 1996, that she had not been receiving any state supplemental pay. Prior to this time, Mayo believed she was on the state supplemental pay payroll because upon her completion of the POST program, she was told that the supplemental pay was already incorporated into her base pay.
In October 1996, Mayo officially applied for state supplemental pay. Her application was denied. Accordingly, Mayo sought a hearing with the Board.
In November 1996, Jim Roberts, Administrative Assistant to the Chief of Police for the Shreveport Police Department, contacted one of the Board members, James L. Thibodeaux, to inquire about the *190 City's PCOs' eligibility for state supplemental pay. In that conversation, Roberts explained the duties and responsibilities of the PCOs and Thibodeaux indicated that the City's PCOs would not be eligible for supplemental pay.
Mayo's appeal to the Board was heard on December 4, 1996. Thibodeaux was on the Board that heard Mayo's appeal. During the hearing, Mayo acknowledged that she was POST-certified and she was commissioned. She also testified that she had testified before a court reporter. At the conclusion of the hearing, the Board voted to grant supplemental pay to Mayo, finding she met the eligibility requirements set forth in LSA-R.S. 33:2218.2. However, an issue arose as to whether the order for state supplemental pay could be retroactively applied to prior fiscal years. The Board concluded that the only way Mayo could receive supplemental pay for the years prior to July 1, 1996, was if the City wrote a letter acknowledging that a clerical error had been made by not requesting supplemental pay for Mayo since 1991. Thus, the Board awarded supplemental pay, retroactive to July 1, 1996, the start of the then-current fiscal year, and left open the issue of entitlement to back pay for prior years.
Shortly after this decision by the Board, the Board received a letter from Roberts. In the letter, Roberts expressed his reluctance to prepare a letter indicating that a clerical error had been made because he believed that under the eligibility rules and regulations that had been followed by the Shreveport Police Department, there had been no clerical error. Roberts also questioned the consistency of the Board's decision regarding Mayo with Thibodeaux's prior unofficial, general response that Shreveport's PCOs were not entitled to supplemental pay.
After the exchange of further documentation between the Board and the Shreveport Police Department, the Board re-examined its decision to award supplemental pay to Mayo. A second hearing was held on March 4, 1997, at which time Mayo was again present, along with Roberts and Gary Parker, an attorney with Shreveport's City Attorney's Office. At the hearing, Mayo testified that she had the power of arrest, although it was limited to the communications center. Mayo also acknowledged that she did not carry a firearm.
Parker expressed his legal opinion about the interpretation of the eligibility requirements contained in LSA-R.S. 33:2218.2. Parker opined that Mayo was entitled to supplemental pay because she was a radio dispatcher who was POST-certified and thus, met the eligibility requirements of LSA-R.S. 33:2218.2.
The Board obtained clarification that Mayo was commissioned as a police communications officer, not as a police officer. Emphasizing the facts that Mayo's power of arrest was limited and that she had no right to bear arms while on-duty as a PCO, the Board concluded that Mayo did not meet the eligibility requirements set forth in LSA-R.S. 33:2218.2. Specifically, the Board interpreted LSA-R.S. 33:2218.2 as requiring the person seeking supplemental pay to be commissioned as a regular police officer, complete with the unlimited power of arrest, the right to bear arms, the ability to testify in court and to enforce the laws of the state and ordinances of the City. The Board concluded that Mayo met all the requirements except that she was not commissioned as a police officer. Concluding that new evidence warranted the reversal of its prior decision, the Board denied Mayo's request for supplemental pay.
Mayo timely filed a petition for judicial review of the Board's decision. The district court reversed the Board, finding that police officer was defined in subsection C(5) of LSA-R.S. 33:2218.2 to include "any person employed on a full-time basis by a municipality ... and all of whose compensation out of public funds is paid solely from municipal ... funds for full-time *191 work as a radio dispatcher." Accordingly, the district court found that the preponderance of the evidence was in favor of Mayo's claim for supplemental pay. On June 25, 1998, a judgment was signed awarding supplemental pay to Mayo, retroactive to July 1, 1996.
The Board appealed contesting the district court's interpretation of LSA-R.S. 33:2218.2 and its finding Mayo had demonstrated her entitlement to supplemental pay by a preponderance of the evidence. Mayo answered the appeal seeking damages for frivolous appeal.

STANDARD OF REVIEW
The right to judicial review of final decisions in adjudication proceedings is set forth in LSA-R.S. 49:964 A. The standard of review to be applied by the reviewing court is set forth in subsection G as follows:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Further, an aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate court of appeal. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. See LSA-Const. art. 5, § 5(C); Donnell v. Gray, 215 La. 497, 41 So.2d 66, 67 (1949); Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121, p. 5, n. 5 (La.App. 1st Cir.2/20/98), 710 So.2d 799, 803 n. 5, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51.
The present case does not involve a factual dispute. Instead, the parties disagree on the interpretation of the eligibility requirements for entitlement to supplemental pay set forth in LSA-R.S. 33:2218.2. The issue on appeal is whether the Board erred in its interpretation of the eligibility requirements of LSA-R.S. 33:2218.2.

ELIGIBILITY REQUIREMENTS FOR STATE SUPPLEMENTAL PAY
Louisiana Revised Statute 33:2218.2 sets forth the eligibility requirements for entitlement to state supplemental pay. At the time Mayo applied for supplemental pay,[4] this statute provided in pertinent part as follows:

*192 A. In addition to the compensation now paid by any municipality ... included in this Subpart to any police officer, every police officer employed by any municipality ... which employs one or more police officers who devotes his full working time to law enforcement and for those hired after March 31, 1986, who have completed and passed a council certified training program as provided in R.S. 40:2405, shall be paid by the state extra compensation in the amount of two hundred seventy-eight dollars per month for each full-time municipal ... law enforcement officer who has completed or who hereafter completes one year of service.
* * * * * *
C. For purposes of this Subpart a municipal ... police officer entitled to additional pay out of state funds shall mean and refer to:
(1) Any person employed on a full-time basis by a municipality ... and all of whose compensation out of public funds is paid solely from municipal ... funds for full-time work as a duly commissioned law enforcement officer for the performance of primary duties which encompass the enforcement of state laws and municipal ... ordinances, including actual enforcement of state and local traffic laws, the making of physical arrests, testifying in court, bearing arms and other like functions.
(2) Any person employed on a full-time basis by a municipality ... and all of whose compensation out of public funds is paid solely from municipal ... funds for full-time work as a duly commissioned law enforcement officer for the performance of supervisory police work or work otherwise involving the supervision or direction of line officers.
(3) Any person employed on a full-time basis by a municipality ... and all of whose compensation out of public funds is paid solely from municipal ... funds for full-time work as a duly commissioned law enforcement officer in providing necessary services to line officers in the performance of their duties.
(4) Any person employed on a full-time basis by a municipality ... and all of whose compensation out of public funds is paid solely from municipal ... funds for full-time work as a desk sergeant or identification technician; provided, however, that the persons referred to in this Paragraph are duly commissioned police officers. Such persons shall be entitled to receive the additional pay out of state funds as provided for in this Paragraph and shall not be denied the payment of such extra compensation by any of the provisions of Paragraph (1) of Subsection D of this Section.
(5) Any person employed on a full-time basis by a municipality ... and all of whose compensation out of public funds is paid solely from municipal ... funds for full-time work as a radio dispatcher.
* * * * * *
D. For purposes of this Subpart the following classes of persons, whether or not duly commissioned as police officers or having the power to make arrests, shall not be deemed to be a municipal... police officer entitled to additional pay out of state funds:
(1) Personnel employed primarily to perform purely clerical or nonenforcement duties, including but not necessarily restricted to the following types of duties of persons: typographical; office machine operators; switchboard operators; filing clerks; stenoclerks; stenographers; dog pound keepers; school crossing guards; and secretaries except those classified under the municipal fire and police civil service law and those classified as secretary to the chief of police in a classified municipal police employees civil service system or a classified municipal employees civil service system created by legislative Act.
*193 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. We find LSA-R.S. 33:2218.2 to be clear and unambiguous. Section A generally establishes who is eligible for supplemental pay. Section C specifically describes who "shall" be deemed a "police officer entitled to [supplemental] pay."
Louisiana Revised Statute 33:2218.2 C(1) describes those persons charged with the duty of physically enforcing the law by patrolling or "walking the beat." Specifically, the very powers and duties set forth in this subsection are the ones that the Board contends Mayo needed to be eligible for supplemental paythe power to make physical arrests, the power to bear arms, and the power to physically enforce state and local laws. If the Board's interpretation was correct, there would be no need for the additional subsections of section C. However, we note the legislature chose to include additional subsections describing who also qualifies as a "police officer entitled to [supplemental] pay." Subsections (2) and (3) describe those persons who are supervisors and who provide services to line officers in the performance of their duties. Subsection (4) describes those persons employed as desk sergeants or identification technicians.
However, there is an additional requirement in subsections (1) through (3) that the person work as a "duly commissioned law enforcement officer." Subsection (4) additionally requires that the person be a "duly commissioned police officer." Notably, subsection (5) does not have an additional requirement of being duly commissioned as a law enforcement or police officer. To qualify as a police officer entitled to supplemental pay under subsection (5), the person must be "employed on a full-time basis by a municipality" and all of his compensation out of public funds must be "paid solely from municipal ... funds for full-time work as a radio dispatcher." Thus, the fact that Mayo is commissioned as a communications officer and not as a police officer does not make her ineligible to receive supplemental pay. Clearly, had the legislature intended that radio dispatchers also be "duly commissioned law enforcement or police officers," it would have inserted such a requirement in subsection (5) as it did in subsections (1) through (4).
Moreover, the purpose of the supplemental pay law is to promote the public peace and safety, by providing better enforcement of law. LSA-R.S. 33:2218.1. This purpose is served by our interpretation of LSA-R.S. 33:2218.2. PCOs are involved in the enforcement of law; patrol officers are not the only persons who "enforce" the laws. PCOs serve a critical role in law enforcement by receiving reports of crimes being committed or having been committed, and having the duty of enabling patrol officers to promptly respond to the distress calls through efficient dispatching of patrol units. If it were not for PCOs, the only laws that would be enforced would be those that patrol officers by chance witnessed being violated during their routine patrols.
Finally, we reject the Board's argument that absurd consequences will result from our interpretation of LSA-R.S. 33:2218.2. The Board argues that if this statute is interpreted so that being a commissioned police officer is not a requirement to receive supplemental pay, every "Tom, Dispatcher and Harry" will be entitled to supplemental pay because there is no requirement that the person seeking supplemental pay be employed by a police department. We disagree.
Section A requires that the police officer (as specifically described in section C), devote his full working time to law enforcement. This restriction to those persons devoting their full time to law enforcement will prevent every "Tom, Dispatcher and Harry" from being eligible for supplemental *194 pay. For those employees hired after March 31, 1986, a claimant of supplemental pay must be POST-certified. Additionally, the performers of purely clerical or nonenforcement duties are specifically excepted-out of the entitlement to supplemental pay by subsection D(1). These requirements, along with the specific descriptions of "police officers" contained in section C, prevent absurd consequences from resulting from our interpretation of this statute.
Mayo meets the eligibility requirements of LSA-R.S. 33:2218.2. It is undisputed that Mayo is a full-time employee, POST-certified, and all of her compensation out of public funds is paid solely from municipal funds for full-time work as a radio dispatcher. Because we find that being a "duly commissioned police officer" is not an eligibility requirement for supplemental pay under section C(5) of the statute, Mayo is entitled to receive supplemental pay. Thus, the Board erred in denying Mayo's application for supplemental pay.

FRIVOLOUS APPEAL
Mayo answered the appeal, requesting damages for frivolous appeal.
Louisiana Code of Civil Procedure article 2164 provides for damages for frivolous appeals. This provision is penal in nature and must be strictly construed. Appeals are favored, and damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay or that the appealing counsel does not seriously believe in the position he advocates. Penton v. Clarkson, 93-0657, p. 12 (La.App. 1st Cir.3/11/94), 633 So.2d 918, 925.
In the instant case, after a careful review of the entire record, we cannot say that damages for frivolous appeal are warranted. While we do not find merit in the Board's assertions on appeal, we cannot say that this appeal was taken solely for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates.

CONCLUSION
For these reasons, the judgment of the district court, reversing the Board's denial of supplemental pay, is affirmed. Costs of this appeal in the amount of $648.37 are assessed to the Board.
AFFIRMED.
NOTES
[1] At the time of her hire, plaintiff's name was Cassundra W. Jernigan. Subsequently, she married Damon Wesley Mayo in 1992, and officially changed her name to Cassundra W. Mayo.
[2] The amount was raised pursuant to an amendment to LSA-R.S. 33:2218.2 by 1996 La. Acts No. 37.
[3] Although is it not clear in the record, it appears that the City discontinued its practice of making up all state supplemental pay steps for its PCOs that were not on the state supplemental pay payroll.
[4] We note that this statute has been amended several times since October 1996. However, none of the amendments are pertinent to the issue presented by this appeal.