825 So.2d 572 (2002)
WARREN ENERGY RESOURCES, INC.
v.
LOUISIANA TAX COMMISSION, et al.
No. 02-115.
Court of Appeal of Louisiana, Third Circuit.
August 28, 2002.
*573 Phyllis D. Sims, Christopher J. Dicharry, Kean, Miller, Hawthorne, D'Armond, McCowen & Jarman, Baton Rouge, for Warren Energy Resources, Inc.
Vyrona M. Wiltz, Krotz Springs, for Louisiana Tax Commission.
Patrick B. McIntire, Oats & Hudson, Lafayette, for James R. Savoie, Sheriff, Cameron Parish.
Court composed of MARC T. AMY, MICHAEL G. SULLIVAN and ELIZABETH A. PICKETT, Judges.
SULLIVAN, Judge.
In these consolidated cases[1], Dynegy, successor in interest to Warren Energy *574 Resources, Inc., appeals the judgment of the trial court that affirms four decisions of the Louisiana Tax Commission (LTC). For the following reasons, we affirm in part and reverse in part.

Factual and Procedural Background
At issue herein are the 1997 and 1998 ad valorem tax assessments by Robert Conner, tax assessor for Cameron Parish (Assessor), on two Dynegy properties which are situated in Cameron Parish: 1) the Barracuda Gas Plant, a gas processing plant, and 2) several gas gathering pipelines.
Dynegy disputed the assessments, paid them under protest, and filed a complaint seeking review by the Cameron Parish Board of Review pursuant to La. Const. art. VII, § 18(E). The Board of Review affirmed the assessments. Thereafter, Dynegy filed notices of appeal with the LTC. Hearings were held before the LTC on the disputed assessments. The Assessor, his appraiser, and an appraiser representing Dynegy appeared and testified at the hearings on the 1997 assessments. However, only the Dynegy representative testified at the hearings on the 1998 assessments. In his absence, the Assessor requested that an LTC staff member introduce his documentation for the 1998 assessments into the record on his behalf. After hearings on the appeals, the LTC affirmed two of the assessments and modified two of them. Dynegy filed petitions for review in the Thirty Eighth Judicial District Court of Cameron Parish. The district court affirmed the LTC's findings with the exception of one gas plant, which is not a part of the present appeal. On September 27, 2001, Dynegy filed this appeal.
The fair market values assigned to properties by the parties, the Board of Review, and the LTC are as follows:

 Barracuda Plant
 1997 tax year 1998 tax year
Assessor $14,160,000 $11,236,548
Dynegy 5,000,00 6,666,666
Board of Review 14,160,000 11,236,548
LTC 12,100,000 11,236,548
 Gas Gathering Lines
 1997 tax year 1998 tax year
Assessor $5,479,667 $3,515,200
Dynegy 1,797,900 1,846,487
Board of Review 5,479,667 3,515,200
LTC 5,400,000 3,515,200

On appeal, Dynegy argues that the fair market values determined by the Cameron Parish tax assessor and the LTC are severely overestimated. Specifically, Dynegy asserts that the district court erred in 1) relying on incompetent evidence that lacks evidentiary value, 2) in failing to recognize that additional obsolescence should have been granted, and 3) in not reversing the decisions of the LTC on the basis that the decisions are arbitrary, capricious, and an abuse of discretion.

Discussion
La. Const. art. VII, § 18 states, in pertinent part:
Section 18. (A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraphs (C) and (G), shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
*575 Tax assessors are responsible for determining the fair market value of the property assessed. Fair market value is:
[T]he price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.
La.R.S. 47:2321 (emphasis added).
Each assessor must follow uniform guidelines, procedures, and rules and regulations established by the LTC when determining the fair market value of all property. La.R.S. 47:2323(A) and (B). Fair market value is determined by utilizing three recognized appraisal procedures: the market approach, the cost approach, and/or the income approach. La.R.S. 47:2323(C). Assessors are required to gather all necessary information to determine the fair market value. La.R.S. 47:2324. They may use self-reporting forms which taxpayers prepare and return to the assessor.
Judicial review of the decision of an administrative body is confined to the record. La.R.S. 49:964(F). Pursuant to La. R.S. 49:964(G), the court "may affirm the decision of the agency or remand the case for further proceedings." Reversal or modification of the decision is limited to situations in which "substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
(7) In cases covered by R.S. 15:1171 through 1177, manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues."
Id.
A court's review of the evidence presented at the hearings before the LTC is limited to the "purpose of determining if the hearing was conducted in accordance with authority and formalities of statute, whether the fact-findings of the body were supported by substantial evidence, and whether the body's conclusions from such findings were arbitrary or constituted an abuse of the hearing body's discretion." Administrators of Tulane Educational *576 Fund v. Johnson, 00-297, p. 3 (La.App. 4 Cir. 4/4/01); 784 So.2d 769, 771, writ denied, 01-1757 (La.10/5/01); 798 So.2d 970.
For ease of discussion, we address the assessments at issue by properties, not by assessment year.

Barracuda Plant
At the hearing before the LTC on the 1997 assessments, Mark Anderson of Ken E. Andrews & Company appeared and testified as Dynegy's representative. He testified that the assessments did not represent the fair market value of the Barracuda Plant, citing the 1991 sale price of $7 million, the subsequent removal of an amine unit valued at $1,693,000, and the repair of additional equipment. Additionally, he argued that the Assessor's fair market value of the plant did not reflect the true economic and functional obsolescence of the plant. Documentation to substantiate Dynegy's position was introduced into the record.
For the 1997 assessment, the Assessor had the firm of Pritchard and Abbott, Inc., appraise the Barracuda Plant. Jarrell Bethard and Charles Allred, representatives of Pritchard and Abbott, Inc., appeared and testified at the hearing, explaining their appraisal of the property. During his testimony, Mr. Bethard explained that a "time" adjustment had been made regarding the $7 million sale price to adjust it to the assessment date. However, he also conceded that the removal of the amine unit and the repair of equipment was not reflected in their appraisal because that information had not been supplied to them. The LTC reduced the 1997 assessment for the Barracuda Plant by $2,060,000, referencing the 1991 sale price, the removal of the amine unit, and the fall in production.
The parties presented their positions to the LTC through expert testimony and documentary evidence. The record clearly reflects that the LTC considered the evidence, reducing the Assessor's fair market value to account for information that the Assessor's appraisers conceded had not been considered. We find the LTC's conclusion that the Barracuda Plant's fair market value for 1997 was $12,100,000 is substantiated by the record.
As previously noted, the Assessor did not attend the 1998 hearings before the LTC, but an LTC staff member introduced the Assessor's 1998 documentation supporting his fair market values. Dynegy argues that without the Assessor or another representative in attendance at the hearing, the LTC's acceptance of the Assessor's fair market value was based upon incompetent evidence, which does not substantiate its determination. Hearsay statements are admissible in administrative hearings, if they are competent. Evans v. DeRidder Mun. Fire, Police Civil Serv. Bd., 01-2466 (La.4/3/02); 815 So.2d 61. The documentation submitted by the Assessor at the 1998 hearings reflects an apparent depreciation of the LTC's 1997 fair market value. This was noted by the LTC members after the hearing was complete, but while the proceeding was still being recorded. Handwritten calculations and notes within his 1998 exhibits reflect that the Assessor did depreciate the LTC's 1997 fair market value to determine his 1998 fair market value. Thus, the Assessor's 1998 valuation, except for the depreciation of the LTC's ultimate fair market value, was presented and substantiated by him at the 1997 hearings. Dynegy's position regarding its 1998 valuation was the same or similar to its 1997 valuation. Therefore, the parties' positions were essentially the same in 1997 and 1998.
The members of the LTC were the same in 1997 and 1998. The transcripts of the hearings reflect that two of the members *577 were in attendance at the 1997 hearing and that all three of them were in attendance at the 1998 hearing. The record also indicates that the members were acquainted with the properties at issue and recalled the 1997 proceedings. Accordingly, we find the LTC's 1998 fair market valuation of $11,236,548 is substantiated by the record.

Gas Gathering Pipelines
Dynegy purchased the gas gathering pipelines at issue on June 27, 1996. The sale included these lines, which are situated in Cameron Parish, and additional lines, which are not situated in the parish. Of the $2,450,000 sale price, $1,797,900 was allotted to the lines situated in Cameron Parish. Pursuant to the terms of the sale agreement, Dynegy could have been responsible for the payment of an additional maximum sum of $750,000, depending on the volume of gas produced and delivered by the seller to Dynegy for transportation. Any additional payments were to be made in 1997, 1998, and 1999.
The Assessor and Mr. Andrews were present at the 1997 hearings on these properties and testified briefly. Dynegy's evidence included the sale document, documents which identify the pipelines within Cameron Parish, and documentation which describes these gas gathering lines as being more than twenty years old with throughput for most of 1997 of 55 Mmcfd, as opposed to the 300 Mmcfd for which they were originally designed. The documentation also indicates that fourteen miles of the lines at issue were abandoned in 1997.
During the hearing, Mr. Andrews questioned the Assessor's fair market value of $5,479,667 in light of the June 1996 sale price of $1,797,900. The Chairman of the LTC asked the Assessor if he had the sale information. The Assessor responded that he did, but that he had utilized the cost approach to achieve "uniformity" with other gas lines throughout the parish. He further explained that he used information gathered from previous owners of the lines. The only exhibit introduced by the Assessor is a typed note that appears to have been prepared by him regarding his calculation of the fair market value and his decision not to consider the sale price of other gas lines not at issue here. According to the note, the Assessor used "the [LTC] Guidelines for Pipelines between pages PL-1 and PL-5" to determine the fair market value of the pipelines. Subpart (A)(2) of section 1301 of Chapter 13 of the Guidelines provides in part:
Pipelines are to be valued for assessment purposes at cost less physical deterioration. A cost schedule is provided for the various sizes of the "other pipelines" (See Tables 1307.C), based on the age of the pipeline, by multiplying replacement cost by the appropriate percent good factor. Where significant functional and economic obsolescence has been proven to the assessor, appropriate allowance should be made on an individual basis.
In his exhibit, the Assessor also noted that the average production delivered to one gas plant through these pipelines was 226 Mmcfd of the 300 Mmcfd it was designed to deliver.
Dynegy asserts that the Assessor should have used the sale price to determine the fair market value. Subpart (H) of the Guidelines provides "[p]ipeline sales, properly documented, should be considered by the assessor as the fair market value, provided the sale meets all tests relative to it being a valid sale."
By his own testimony, the Assessor disregarded the June 1996 sale of these gas gathering lines on the basis that one sale did not "constitute the uniformity process for the rest of the lines." There is no *578 indication in his testimony or documentation that the sale was not valid or did not represent an arms-length transaction between the parties.
A conclusion of a public body is "capricious" when the conclusion has "no substantial evidence to support it, or [is] contrary to substantiated competent evidence. The word `arbitrary' implies a disregard of evidence or of the proper weight thereof." Coliseum Square Ass'n v. City of New Orleans, 544 So.2d 351, 360 (La. 1989).
While the Assessor followed the LTC Guidelines to determine his fair market value of these pipelines, he completely disregarded a sale six months prior to his valuation, explaining that he did so in order to achieve uniformity. Under these circumstances, we find his disregard of the sale to be arbitrary and capricious and reverse the LTC's 1997 fair market value of $5,400,000.
Nothing in the record indicates that the sale price of these gas gathering pipelines does not reflect their true fair market value. Accordingly, we find that the June 1996 sale price of $1,797,900 is the 1997 fair market value of these lines.
As previously discussed, the Assessor did not attend the 1998 hearings on these properties. We have studied the documentation introduced on his behalf. The documentation reveals that the Assessor again utilized the LTC Guidelines to determine the new-cost of the lines with reduction for physical deterioration and application of a "percent good factor" as required by the Guidelines. We note that the fair market values represented in the documentation do not total the fair market value used by the Assessor for his 1998 assessment. The 1998 assessed value is represented on the sheet, but it is unclear how the Assessor arrived at that value. Additionally, there is reference to an obsolescence percentage of 42% which is not included in the calculation for the assessed value. None of the Assessor's other documentation clarifies his position. For these reasons, we reverse the trial court's affirmation of the LTC's 1998 fair market value of $3,515,181.
We find that Dynegy's fair market value of $1,846,487 for 1998 is supported by Mr. Andrews' testimony and documentation. As previously noted, the documentation reflects that the lines were more than twenty years old, that the throughput in 1997 was approximately one-sixth of what it was originally designed for, and that fourteen miles of the lines were abandoned in 1997. Accordingly, we find the 1998 fair market value of the gas gathering lines to be $1,846,487.

Decree
For these reasons, the judgment of the trial court affirming the decision of the Louisiana Tax Commission in Docket Nos. 10-14845 and 10-15181 is affirmed, and the judgment of the trial court affirming the decisions of the Louisiana Tax Commission in Docket Nos. 10-14846 and 10-15183 is reversed. The 1997 fair market value for the gas gathering lines is found to be $1,797,900 and the 1998 fair market value for the gas gathering lines is found to be $1,846,487. Costs are assigned fifty percent to the Assessor and fifty percent to Dynegy.
It is ordered that the amounts paid under protest by Dynegy in connection with Docket Nos. 10-14846 and 10-15183 be refunded and that accrued interest be paid to it in accordance with the provisions of La.R.S. 47:1998.
AFFIRMED IN PART AND REVERSED IN PART.
AMY, J., dissents in part and concurs in part and assigns written reasons.
*579 AMY, J., dissenting in part and concurring in part.
In my view, consideration of the taxpayer's third assignment of error is dispositive in this case. Judicial review of decisions of the Louisiana Tax Commission is authorized by La.R.S. 47:1998(A)(1), which states:
Any taxpayer or bona fide representative of an affected tax-recipient body in the state dissatisfied with the final determination of the Louisiana Tax Commission under the provisions of R.S. 47:1989, shall have the right to institute suit within thirty days of the entry of any final decision of the Louisiana Tax Commission in the district court for the parish where the Louisiana Tax Commission is domiciled or the district court of the parish where the property is located contesting the correctness of the assessment....
La.R.S. 49:964(F) and (G), which is part of the Administrative Procedure Act, provides for the range of review as follows:
F. The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
(7) In cases covered by R.S. 15:1171 through 1177, manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
"The manifest error test is used in reviewing facts as found by the agency, as opposed to the arbitrariness test used in reviewing conclusions and exercises of agency discretion." Broussard v. Louisiana Tax Comm'n, 614 So.2d 1341, 1344 (La.App. 3 Cir.1993); citing, Holiday Bossier Ltd. Partnership v. Louisiana Tax Comm'n, 574 So.2d 1280 (La.App. 2 Cir. 1991), writ denied, 578 So.2d 136 (La. 1991), Johnson v. Odom, 536 So.2d 541 (La.App. 1 Cir.1988), writ denied, 537 So.2d 213 (La.1989).
*580 La. Const. art. VII, § 18 bestows upon the tax assessor the responsibility of determining the fair market value with regard to ad valorem taxes. La.R.S. 47:2321 defines fair market value as:
Fair market value is the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.
Additionally, La.R.S. 47:2323 provides the criteria for determining the fair market value, as follows:
A. The criteria for determining fair market value shall apply uniformly throughout the state. Uniform guidelines, procedures and rules and regulations as are necessary to implement said criteria shall be adopted by the Louisiana Tax Commission only after public hearings held pursuant to the Administrative Procedures Act. [footnote omitted]
B. Each assessor shall follow the uniform guidelines, procedures, and rules and regulations in determining the fair market value of all property subject to taxation within his respective parish or district. Any manual or manuals used by an assessor shall be subject to approval by the Louisiana Tax Commission or its agency.
C. Criteria.
The fair market value of real and personal property shall be determined by the following generally recognized appraisal procedures: the market approach, the cost approach, and/or the income approach.
(1) In utilizing the market approach, the assessor shall use an appraisal technique in which the market value estimate is predicated upon prices paid in actual market transactions and current listings.
(2) In utilizing the cost approach, the assessor shall use a method in which the value of a property is derived by estimating the replacement or reproduction cost of the improvements; deducting therefrom the estimated depreciation; and then adding the market value of the land, if any.
(3) In utilizing the income approach, the assessor shall use an appraisal technique in which the anticipated net income is processed to indicate the capital amount of the investment which produces the net income.
In the present case, the taxpayer and the assessor both considered all three approaches as described in La.R.S. 47:2323(C). According to the Louisiana Tax Commission's Findings of Fact and Reasons for Decision, the following were determined to be the fair market values with regard to the Barracuda Plant:

 1997 tax year 1998 tax year
Assessor $14,160,000 $11,236,548
Taxpayer 5,000,000 6,666,666
Board of Review 14,160,000 11,236,548
La. Tax Commission 12,100,000 11,236,548

With regard to the gas gathering lines, the following were found to be the fair market values assessed in the 1997 and 1998 tax years:

 1997 tax year 1998 tax year
Assessor $5,479,667 $3,515,200
Taxpayer 1,797,900 1,846,487
Board of Review 5,479,667 3,515,200
La. Tax Commission 5,400,000 3,515,200

*581 For the 1998 tax year, the Cameron Parish tax assessor appears to have relied on the same appraisals of the fair market value from the 1997 tax year and depreciated the values accordingly for the 1998 tax year.
As is clearly illustrated by the above information, the taxpayer's appraisal and the Louisiana Tax Commission's findings differ significantly. In affirming the findings of the Louisiana Tax Commission, the trial court stated:
When reviewing an administrative decision, the district court functions as an appellate court. The decision of the tax assessor when affirmed by the Louisiana Tax Commission is presumed to be correct. However, the district judge is required to study the record to determine if the decisions were supported by sufficient evidence.
In each instance of these consolidated cases, with the exception of the Lowry Plant, it is the determination by this court that the taxpayer was given a fair hearing in which the Louisiana Tax Commission had sufficient evidence for its decision. In these instances in which the assessor's decision was confirmed, there was sufficient evidence to conclude that the assessor had made a proper consideration of the case and had used recognized appraisal methods which are applied uniformly throughout the state. In each one of those cases, the decision of the Louisiana Tax Commission is affirmed.
According to La.R.S. 49:964(G)(6), "the court shall make its own determination and conclusions of fact by a preponderance of evidence based on its own evaluation of the record reviewed in its entirety upon judicial review." Consequently, without findings of fact that would reasonably support the tax commission's conclusions, I cannot agree with the trial court's affirmation.
In Johnson v. LaSalle Hotel Operating Partnership, L.P., 00-2269, p. 3 (La.App. 1 Cir. 12/28/01); 803 So.2d 1100, 1101, writ denied, 02-288 (La.4/26/02); 814 So.2d 556, regarding judicial review of the tax commission's findings, the first circuit stated:
Among the grounds provided for judicial reversal of a decision of the LTC is a finding by the court of review that "substantial rights of the appellant have been prejudiced," because (1) the decision was "[a]rbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion," or (2) the decision was "[n]ot supported and sustainable by a preponderance of the evidence...." La.R.S. 49:964 G(5) & (6). On judicial appeal of the decision, no deference is owed by the court of appeal to the factual findings and conclusions of law from the district court's review. See La. Const. art. V, § 5(C); Comm-Care Corporation, 99-709 at p.5, 762 So.2d [770] at 773; Mayo v. Municipal Police Board of Review, 98-1846, p. 6 (La.App. 1 Cir. 11/5/99), 745 So.2d 188, 191.
The elements of La.R.S. 49:964(G)(5) and (6), require that the tax commission must make decisions that are not arbitrary or capricious and that are supported and sustainable by a "preponderance of the evidence as determined by the reviewing court." Furthermore, Schackai v. Louisiana Bd. of Massage Therapy, 99-1957, 99-1958, p. 9 (La.App. 1 Cir. 9/22/00); 767 So.2d 955, 960, writ denied, 00-2898 (La.12/8/00); 776 So.2d 464 states:
The arbitrary and capricious test is used in reviewing the administrative tribunal's conclusions and its exercise of discretion. Save Ourselves, Inc. v. Louisiana Envtl. Control Comm., 452 So.2d 1152 (La.1984). A conclusion of a public body is "capricious" when the conclusion has no substantial evidence to support it *582 or the conclusion is contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Coliseum Square Ass'n v. City of New Orleans, 544 So.2d 351 (La.1989); Burke v. Baton Rouge Metro, 97-0947 (La.App. 1 Cir. 5/15/98), 712 So.2d 1028.
After careful consideration, I find that the tax commission's conclusions fail to illustrate supported, sustainable findings necessary to provide a reasonable or adequate basis for the ultimate determination and judgment of that body.
The Louisiana Tax Commission reviewed the taxpayer's fair market valuations for the 1997 and 1998 tax years in reference to the Barracuda Gas Plant and the gas gathering pipelines. At the October 27, 1997 hearing, the taxpayer was represented by Mark Andrews, who testified in support of the taxpayer's appraisal. The Cameron Parish tax assessor was also present, along with a representative of the appraisal firm that performed the valuations on behalf of the parish. As illustrated by the above tables, the tax commission decreased the tax assessor's fair market value on the Barracuda Plant by $2,060,000 and the gas gathering pipelines by $79,667. The record does not reveal how the tax commission reached its valuation or for what reasons its valuation differs from that of the tax assessor's or the taxpayer's appraisal.
In 1998, the taxpayer again sought the review of the tax commission with regard to the 1998 valuations of the same property. Mr. Andrews again represented the taxpayer. No one represented the Cameron Parish tax assessor and the parish's assessment was entered into evidence by the tax commission. The tax commission affirmed the tax assessor's 1998 valuation.
In light of the above, the following problems are evident. First, with regard to the 1997 tax year, the tax commission did not accept the valuations as presented by the tax assessor or the proposals of the taxpayer, but for reasons not apparent in the record or set forth in the judgment. Furthermore, although in 1997 the tax commission decreased the valuations as presented by the tax assessor, in 1998 the assessor's valuations were affirmed. However, no clear evidence resolves whether those valuations were based on a depreciation of the assessor's original 1997 appraisal or a depreciation of the 1997 valuation as determined by the tax commission. Thus, the record is unclear as to whether the depreciated value was arrived at by depreciating the 1997 valuations of the tax commission or the 1997 appraisals of the tax assessor.
Although the taxpayer presented evidence of decreased valuations, the tax commission did not accept those valuations, but rather chose a figure somewhere between the two proposed alternatives. If the tax commission was able to resolve these competing valuations to reach its determination by findings of fact and/or credibility determinations, it is not evident from the record. For these valuations to materialize without explanation or specific findings of fact provides no guide to this court as to what was considered by the tax commission in its decision. Moreover, this court has the duty to review the reasonableness of the tax commission's conclusions and to ensure that a rational connection can be made between the facts presented by the parties and the tax commission's ultimate decision. In my view, the absence of such a basis in this matter requires that the judgments be reversed and the consolidated cases remanded to the tax commission for further proceedings.
NOTES
[1] There are four consolidated cases on appeal under docket numbers: 02-115, 02-116, 02-117, and 02-118.