# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-379

IN RE:  APPEAL OF ANR PIPELINE CO., MONA KELLEY, IN HER

OFFICIAL CAPACITY AS CAMERON PARISH TAX ASSESSOR

VERSUS

ANR PIPELINE COMPANY, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT,
PARISH OF CAMERON, NO. 10-18579
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

### SHANNON J. GREMILLION
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Jimmie C. Peters, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Hilton S. Bell
Angela W. Adolph
Milling Benson Woodward, L.L.P.
909 Poydras Street, Suite 2300
New Orleans, LA 70112-1010
(504) 569-7000
Counsel for Defendants/Appellants:
Southern Natural Gas Company
Tennessee Gas Pipeline Company
ANR Pipeline Company

**Brian A. Eddington**
**Attorney at Law**
**8941 Jefferson Hwy, Ste 200**
**Baton Rouge, LA 70809**
**(225) 924-4066**
**Counsel for Plaintiff/Appellee:**
**Mona Kelley, Assessor for Cameron Parish**

**Robert Dean Hoffman, Jr.**
**Attorney at Law**
**7039 Hwy 190 E Service Rd #A**
**Covington, LA 70433-4961**
**(985) 727-3893**
**Counsel for Defendant/Appellee:**
**Louisiana Tax Commission**

**GREMILLION, Judge.**

A group of interstate pipeline companies, ANR Pipeline Company, Tennessee Gas Pipeline Company, and Southern Natural Gas Company (the companies), appeal the decision of the district court that reversed the ruling of the Louisiana Tax Commission. This is but one of similar ad valorem tax disputes that have spread across the State like the pipelines these companies own. Specifically, Mona Kelley, Cameron Parish Tax Assessor, sought judicial review of the ruling, which reversed the assessments of the companies in parishes across the state, including Cameron Parish. The procedural history of the current dispute is intertwined with the others to a great degree, as other assessors have also sought judicial review in their respective parishes of the commission's ruling.

## FACTS AND PROCEDURAL HISTORY

During the years 1994 through 2003, certain pipelines had their properties assessed for ad valorem tax purposes at 15% of their fair market values (FMVs). Not so the companies, whose properties were assessed at 25 percent. "Public service properties," such as pipeline or gas companies,[1] are required to be assessed at 25% of their FMVs. La.Const. art. 7, §18.

These disparate assessments were challenged by the companies in a suit filed in the 19th Judicial District Court. Rather than granting the companies their requested relief, refunds of the ten percent difference, the trial court and the First Circuit Court of Appeal held that the companies' refunds should be based on reassessments employing the same methods and at the 15% rate their competitors had enjoyed. *ANR Pipeline Co. v. La. Tax Comm'n.*, 05-1142-50 (La.App. 1 Cir. 9/7/05), 923 So.2d 81, *writ denied*, 05-2372 (La. 3/7/06), 925 So.2d 547, *cert. denied*, 549 U.S. 822, 127 S.Ct. 157 (2006). The rationale supporting this remedy

---

[1] *See* La.R.S. 47:1851(M).

1

holds that the goal of courts in redressing disparate assessment cases is to achieve uniformity and equality in assessments. *See Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 43 S.Ct. 190 (1923).

The Louisiana Tax Commission then ordered the assessors to reassess the companies' properties using the same valuation methods as they had used for the other pipelines. Bobby Conner, Cameron Parish Tax Assessor at the time, undertook such a reassessment. The companies argued that the reassessed value should factor all forms of depreciation, including the physical and external, or economic, obsolescence of the pipelines. The argument for factoring external obsolescence was based upon the fact that the pipelines were operating below their capacities.

In support of their obsolescence valuation, the companies submitted the affidavits of Ms. Sally Costley, their tax agent; Mr. Thomas K. Tegarden, an expert in public utility property appraisal; Mr. Richard Smead, an expert in regulation of interstate natural gas pipelines by the Federal Energy Regulatory Commission; and Dr. David E. Dismukes, an LSU economist and Associate Director of the Center for Energy Studies at LSU. These experts evaluated the total value of the companies' pipelines, then assigned values for the portion within Louisiana. This appraisal method is known as "unit appraisal." The companies then supported their arguments for external obsolescence with data on the total capacities and loads of the pipelines.

Conner declined to factor obsolescence into the assessment because, he maintained, the companies had supplied insufficient documentation to support their figures. Specifically, Conner identified the companies' failure to furnish data demonstrating the degree to which their pipelines in Cameron Parish had suffered diminished use. Conner's reassessment resulted, largely, in the companies being

2

billed for amounts in excess of the original 25% assessments. The companies then appealed to the Louisiana Tax Commission. During the proceedings before the commission, testimony was heard from several witnesses, including Costley and Conner. The commission reversed Conner and held that he had abused his discretion in failing to allow for obsolescence in determining the proper assessment.

Conner retired during the pendency of the proceedings and was succeeded as assessor by appellee, Mona Kelley. Kelley appealed the commission's ruling by filing the present action, a petition for judicial review, in the 38th Judicial District Court in Cameron Parish. The companies appealed the commission's ruling by filing for judicial review in the 19th Judicial District Court. In response to Kelley's petition, the companies filed exceptions of lis pendens, lack of subject matter jurisdiction, no right of action, and prescription. Those exceptions were rejected. The companies sought writs of supervisory review from this court, which were denied. The matter proceeded to trial on September 15, 2010. The trial court vacated the commission's ruling.

The companies appeal the trial court's ruling in favor of Kelley.

## ASSIGNMENTS OF ERROR

The companies assign the following errors:

1.    The trial court erred in denying Taxpayers' declinatory exceptions of lis pendens, improper venue and lack of subject matter jurisdiction and preemptory exceptions of no cause of action, no right of action and prescription.

2.    The LTC and trial court erred in placing the burden of proof as to obsolescence on Taxpayers.

3.    The evidentiary standard in overcoming a presumption of correctness in favor of an assessor is by a preponderance of the evidence.

4.    The LTC and trial court erred in finding that the Assessor had

utilized the same methodology as used for non-public service pipelines in Cameron Parishe.[sic]

5. The LTC erred in adopting the Assessor's determinations of fair market value and applying a deduction for throughput/capacity utilization.

6. The trial court erred in adopting the Assessor's determinations of fair market value.

7. The LTC and trial court erred in failing to recognize additional obsolescence in Taxpayers' property.

8. The LTC Guidelines, §1301A, et seq., for the years 1998 through 2003 are invalid and conflict with La. R.S. 47:2323C, which requires that Assessors recognize all depreciation under the cost approach, including all forms of obsolescence.

9. The use of the LTC Guidelines, La. Ad. Code 61 (Part V): 1301, et seq., in valuing the Taxpayers' property for the tax years 1994 through 2003 violates the due process and equal protection clause of the Louisiana and U.S. Constitutions since the Taxpayers were not provided notice that the Guidelines would apply to their property and were thus not provided an opportunity to participate in the LTC's annual rule-making process when adopting the Guidelines.

10. The LTC Guidelines, La. Ad. Code 61 (Part V): 1301, et seq., used by the Assessor in valuing the Taxpayers' property for purposes of determining refunds do not specify the information the Taxpayers were to provide to the Assessor for purposes of determining obsolescence in their properties and are thus so vague that the Guidelines violate the Taxpayers' rights to due process and equal protection under the Louisiana and U.S. Constitutions.

11. The Assessor's practice of disclosing the information the Assessor will consider in granting an allowance for obsolescence only after the tax rolls have closed violates the Taxpayers' rights to due process and equal protection under the Louisiana and U.S. Constitutions.

12. The actions of the LTC and the Assessor in valuing the Taxpayers' property for purposes of determining refunds violates the uniformity requirements of the Louisiana Constitution and the equal protection and due process clauses of the Louisiana and U.S. Constitutions.

## ANALYSIS

This court is not the first to confront these issues. Our colleagues on

the Second Circuit Court of Appeal have dealt with these same issues

4

involving the same companies. *See Jones v. S. Natural Gas Co.*, 46,347, 46,348, 46,351 (La.App. 2 Cir. 4/13/11), ___ So.3d ___. We find the second circuit's analyses of these issues highly persuasive.

### Standard of Review

This matter involves an appeal by Kelley of the actions of an administrative body, the Louisiana Tax Commission. The Administrative Procedures Act, La.R.S. 49:951, et seq., governs judicial review of decisions of administrative bodies in this case. *See* La.R.S. 49:964. The Act provides that an administrative body's decisions can be affirmed, remanded for further proceedings, or reversed or modified if substantial rights of the appellant have been prejudiced because of legal error or if the decision is "[n]ot supported and sustainable by a preponderance of evidence as determined by the reviewing court." La.R.S. 49:964(G)(6). Only when the administrative body has the opportunity to judge the credibility of witnesses and the reviewing court has not is deference owed to the factual determinations made by the agency. *Id.* In this case, only the commission received testimony from any witness.

### Assignment of Error 1:

The companies filed six exceptions to Kelley's action. The trial court denied those, and the companies sought writs with this court. In denying writs, we found no error in the trial court's ruling. *Kelley v. ANR Pipeline Co.* 10-670 (La.App. 3 Cir. 8/3/10) (unpublished denial of writs). Unless we refer an issue for appeal, this court does not reconsider matters when, in denying writs, we find no error. Uniform Rules- Courts of Appeal 2–18.7; *D'Amico, Curet & Dampf v. Jumonville,* 458 So.2d 903 (La.1984).

5

*Assignment of Error 2:*

The companies' second assignment of error urges that the commission and the trial court placed the burden of proof of obsolescence on them rather than the assessor. They cite La. R.S. 47:2324, which provides, in pertinent part (emphasis theirs), "Each assessor *shall* gather all data necessary to properly determine the fair market value of all property subject to taxation within his respective parish or district." They also contend that the commission's regulations regarding the forms taxpayers must file, specifically the LAT 14 form, require the assessor to return insufficient forms for further compliance. La.Admin. Code 61:V.1303(B). Lastly, the companies cite our decision in *Warren Energy Resources, Inc. v. Louisiana Tax Commission*, 02-115 (La.App. 3 Cir. 8/28/02), 825 So.2d 572, *writ denied*, 02-2450 (La. 12/13/02), 831 So.2d 985, for the proposition that La.R.S. 47:2324 requires the assessor to be more than a passive analyst of the sufficiency of the documentation submitted by the taxpayer.

The companies, though, ignore § 2324's express approval of an assessor's use of self-reporting forms to secure the data he needs in order to determine the FMV of property. And our courts have long held that the party seeking obsolescence bears the burden of producing sufficient evidence to the assessor. *Dow Chemical Co. v. Pitre*, 468 So.2d 747 (La.App. 1 Cir. 1985), *writ denied*, 474 So.2d 1308 (1985); *Bailey v. Enervest Operating Co., LLC*, 45,553 (La.App. 2 Cir. 6/30/10), 43 So.3d 1046.

We find no merit to the companies' second assignment of error.

***Assignments of Error 3 through 7:***

The essence of the companies' assignments of error three through seven is that the commission and the trial court failed to apply the principles of fair market valuation established by La.Const. art. 7, § 18. The companies not only disagree with Conners' determination that they were not entitled to a reduction in the FMVs based upon external obsolescence, they also disagree with the commission's decision to adopt Conners' determination of raw FMV, and to then apply an obsolescence factor based on the data they supplied. In other words, they contend that the commission's determination of FMV was too high even after reduction for external obsolescence. Because the pipelines are regulated by the Federal Energy Regulatory Commission, the price a buyer would willingly pay is diminished. The FMV is "the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances[.]" La.R.S. 47:2321. Three forms of appraisal are approved by the revised statutes: 1) the market approach, in which the market estimate is based upon actual prices paid in transactions; 2) the cost approach, in which the assessor estimates the replacement or reproduction cost plus the market value of the land, then subtracts estimated depreciation; and 3) the income approach, "in which the anticipated net income is processed to indicate the capital amount of the investment which produces the net income." La.R.S. 47:2323(C). Any or all of these approaches may be utilized. *Id.*

As we view the matter, the issue here is not whether an obsolescence factor is mandatory. Through 1999, the commission's guidelines provided that "economic and functional obsolescence shall be given," and, "should be recognized." La.Admin. Code 61:V.1301. In 1999, the language was changed to

the more permissive "may be recognized." La. Reg. 25:316 (February 1999). In March 2009, the language was again changed to provide, "Functional and/or economic obsolescence shall be considered in the analysis of fair market value as substantiated by the taxpayer in writing." Regardless of whether the assessor is mandated to recognize economic obsolescence, he still retains the discretion to determine whether the taxpayer has substantiated that obsolescence. Rather, the issue is whether the commission manifestly erred when it determined that Conner abused his discretion in determining that the companies failed to sufficiently substantiate their claims of economic obsolescence.

We find that the record does not reasonably demonstrate that Conner abused his discretion. The figures supplied to Conner by the companies consisted of their annual system-wide percentages of pipeline capacity used. These figures changed between the time the companies submitted their reports to Conner in May 2006 and when their attorneys submitted a letter with an affidavit from Costley in August 2006. The differences between these figures have never been explained. Further, Conner noted that the figures were never particularized to Cameron Parish. This is critical.

The case of *Transcontinental Gas Pipeline Corp. v. Louisiana Tax Commission*, 09-1988-92 (La. 3/16/10), 32 So.3d 199, involved a constitutional challenge under the Commerce Clause to the assessment of intrastate pipelines at 15% and interstate pipelines at 25%. The Louisiana Supreme Court recognized that FMV is not a constant. The ad valorem tax scheme requires that assessors value the portions of the pipelines within their parishes, while the commission values the entire system. "What a willing buyer would pay for a particular piece of pipe in one parish, and the apportioned value of a certain amount of pipe in a

parish based on what a willing buyer would pay for an entire pipeline transportation business throughout the state might be quite different." *Id.* at 214. It was incumbent upon the companies to establish the economic obsolescence of those portions of their pipelines within Cameron Parish. The only information the companies supplied was the percentages of pipeline capacity used for each year at issue, without supporting financial information regarding economic loss. This information might be adequate for the commission, which assesses the entire pipeline system, but it is not for parish assessors.

Accordingly, the decision of the commission to reverse the assessor was not supported or sustainable by a preponderance of the evidence. The trial court is affirmed.

### *Assignments of Error 8 and 9:*

The companies' assignment of error eight argues that the commission guidelines from 1998 to 2003 were in conflict with La.R.S. 47:2323. They contend that § 2323 mandates assessors to consider economic obsolescence, while the guidelines made it permissible. Their ninth assignment contends that the changes in the guidelines violated the companies' due process and equal protection rights because they were not given notice of the changes nor afforded an opportunity to participate in the decision-making process that resulted in the changes to the guidelines. In *Jones*, ___ So.3d ___, the second circuit interpreted the guidelines as a change in the burden of proof of obsolescence. Changes in the burden of proof, without altering or abrogating substantive rights, do not violate due process. *Id.* The right to obtain a reduction for obsolescence was not affected. This rationale applies equally to both assignments of error. We agree with and adopt the second circuit's analysis.

9

*Assignments of Error 10 and 11:*

These assignments of error address the duty the companies claim the assessor owes to timely notify them of the information needed to substantiate their claims for obsolescence and that the commission guidelines are impermissibly vague. We have already noted that the statutes place an obligation on the assessor to gather all information needed to determine FMV. La.R.S. 47:2324. But we have also noted that the statute provides that in fulfilling this obligation the assessor may rely on self-reporting by the taxpayer.

The guidelines provide for return of the LAT Form 14 if it was not properly prepared. La.Admin. Code 61:V.1303. While the companies supplemented their forms with memoranda letters explaining their contentions that they were entitled to reductions for economic obsolescence, the information they supplied, sufficient for commission purposes, was not sufficient for the purposes of the assessors, who are obliged to assess only that portion of the property within their parishes. The functions of the commission and the assessors are statutory. The companies, who have been litigating these issues for years, are not ignorant of these functions and cannot avail themselves of ignorance of the law.[2] La.Civ. Code art. 5. We see no demonstration that the guidelines or statutory provisions are impermissibly vague.

The companies summarily maintain that they "did not have an opportunity to participate in the LTC annual rulemaking under the Administrative Procedures Act. . ." There is, however, no showing that the commission failed to comply with the dictates of the Administrative Procedures Act regarding the adoption of rules. *See* La.R.S. 49:953. The guidelines changes ordered by the commission were

---

[2]The language of the statute on which the companies premise their argument, La.R.S. 47:2323, provides in pertinent part, "each assessor shall gather all data necessary to properly determine fair market value of all property subject to taxation *within his respective parish or district.*" (Emphasis added). This emphasizes the local nature of the information required by the assessors.

10

published in the Louisiana Register.  This assignment of error is without merit.

*Assignment of Error 12:*

The companies, in this assignment of error, contend that the requirement of uniformity in assessments was violated because some assessors granted reductions for economic obsolescence and others did not.  In *Jones*, ___ So.3d ___, the second circuit in addressing this same argument, and we agree with our colleagues. The requirement of uniformity in assessments merely requires that uniform methods of appraisal be employed and does not mandate uniformity in results, as we have already noted.

**CONCLUSION**

Parish tax assessors appraise the value of property within their parishes.  It is incumbent upon taxpayers positioned to claim to a reduction of their ad valorem tax liability to prove they are entitled to that reduction. The value of property owned by a taxpayer in one parish will have a different value in another parish, even assuming properties of the same size. Property in one parish will prove economically more beneficial than property in another parish.  Property in one parish will see more use than property in another parish.  Thus, in claiming economic obsolescence before a parish assessor, one must demonstrate that obsolescence particular to the parish in question.  The determination of whether the information provided is satisfactory rests within the sound discretion of the assessor, subject to review at several levels.

Here, the Cameron Parish Assessor was provided with no information particularized to his parish.  It cannot be said under those circumstances that he abused his discretion in refusing the companies' requests for recognition

11

of their claims for economic obsolescence.  The commission's reversal of his decision was without basis.

**AFFIRMED.**