# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2022 CA 0115

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## ACADIA PARISH BOARD OF REVIEW; JAMES J. PETITJEAN, IN HIS CAPACITY AS ASSESSOR FOR ACADIA PARISH; AND THE LOUISIANA TAX COMMISSION

### *CONSOLIDATED WITH*

## NO. 2022 CA 0116

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## EVANGELINE PARISH BOARD OF REVIEW; DIRK DEVILLE, IN HIS CAPACITY AS ASSESSOR FOR EVANGELINE PARISH; AND THE LOUISIANA TAX COMMISSION

### *CONSOLIDATED WITH*

## NO. 2022 CA 0117

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## BEAUREGARD PARISH BOARD OF REVIEW; BRENT RUTHERFORD, IN HIS CAPACITY AS ASSESSOR FOR BEAUREGARD PARISH; AND THE LOUISIANA TAX COMMISSION

### *CONSOLIDATED WITH*

## NO. 2022 CA 0118

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## RAPIDES PARISH BOARD OF REVIEW; RICHARD I. DUCOTE, JR., IN HIS CAPACITY AS ASSESSOR FOR RAPIDES PARISH; AND THE LOUISIANA TAX COMMISSION

*Welch, J. concurs without reasons*

*McClendon, J. dissents with Reasons.*

NO. 2022 CA 0119

PERDIDO ENERGY LOUISIANA, LLC

VERSUS

VERNON PARISH BOARD OF REVIEW; MICHAEL C. BEALER, IN HIS
CAPACITY AS ASSESSOR FOR VERNON PARISH; AND THE
LOUISIANA TAX COMMISSION

*Judgment Rendered:*   SEP 0 1 2022

\* \* \* \* \* \* \* \*

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. 693700, Sec. 25
consolidated with
Case Nos. 693701, 693702, 693703, 693704

The Honorable Wilson E. Fields, Judge Presiding

\* \* \* \* \* \* \* \*

| | |
|---|---|
| Kyle P. Polozola<br>Lafayette, Louisiana<br>and<br>Phyllis D. Sims<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant<br>Perdido Energy Louisiana, LLC |
| Brian A. Eddington<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>James J. Petitjean, Assessor for Acadia<br>Parish; Brent Rutherford, Assessor for<br>Beauregard Parish; Dirk Deville,<br>Assessor for Evangeline Parish; Richard<br>I. Ducote, Jr., Assessor for Rapides<br>Parish; and Michael C. Bealer, Assessor<br>for Vernon Parish |
| Franklin "Drew" Hoffman<br>Baton Rouge, Louisiana<br>and<br>Robert D. Hoffman, Jr.<br>Madisonville, Louisiana | Counsel for Defendant/Appellee<br>The Louisiana Tax Commission |

\* \* \* \* \* \* \* \*

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

**THERIOT, J.**

This is a judicial review proceeding arising from the denial of a taxpayer's request for a reduction in the fair market value of the taxpayer's property based on obsolescence. The taxpayer appeals from a district court judgment affirming the decisions of the Louisiana Tax Commission ("LTC"). For the reasons set forth herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

Perdido Energy Louisiana, LLC ("Perdido") owns oil and gas wells and equipment subject to ad valorem taxation in Acadia, Beauregard, Evangeline, Rapides, and Vernon Parishes. The property, which Perdido purchased in December 2017, consists of 23.88 miles of pipelines and a total of one hundred and six wells, comprised of forty-seven active wells, eight injection wells, forty-eight shut-in wells, and three temporarily abandoned wells.

This matter originated as a challenge by Perdido to the correctness of assessments made by the Assessors for Acadia, Beauregard, Evangeline, Rapides, and Vernon Parishes (collectively "Assessor defendants"). After the Assessor defendants assessed Perdido's property located in their respective parishes for ad valorem tax purposes, Perdido filed protests with the parish governing authorities for the above-referenced parishes, challenging the amount of the assessments based on a disparity between the adjusted purchase price ($3,072,671.79) and the assessed value ($58,609,795.00). The protests were denied, and Perdido appealed the denials to the LTC.

In its appeals to the LTC, Perdido argued that the Assessor defendants failed to properly value and assess its oil/gas wells, gathering pipelines, and equipment based on the purchase price and on an appraisal prepared by Perdido's expert, Joseph Calvanico, and provided to the Assessor defendants. The five appeals were consolidated for hearing before the LTC, which was held on October 23, 2019. At

3

the hearing, Perdido presented testimony from its president, secretary, and founder, Joshua E. Holden; its property tax consultant, Daron Fredrickson; and its expert appraiser, Joseph Calvanico. The Assessor defendants presented testimony from Beauregard Parish Chief Deputy Assessor, Rhonda Farris; Acadia Parish Deputy Assessor, Cheryl Boudreaux; Rapides Parish Assessor, Richard I. Ducote, Jr.; Vernon Parish Assessor, Michael C. Bealer; and Rodney Kret, an expert in the field of assessment practice and procedure. The parties also filed a number of exhibits into the record, including the Purchase and Sale Agreement; Mr. Calvanico's fair market value appraisal; and a document titled "Explanation of Depreciation," which was prepared by Mr. Calvanico for the LTC hearing.

Joshua Holden testified that Perdido Energy Louisiana, LLC was formed in conjunction with the purchase of the Louisiana property at issue in this matter. Perdido's business involves "going in and buying oil fields off of large companies, figuring out ways to cut expenses and increase production to extend the longevity and life of those fields." Mr. Holden testified that Perdido acquired the property at issue in this matter in December 2017 for an adjusted purchase price of approximately $3,072,000.00, and explained that the purchase was an arms-length transaction and did not involve a distressed seller. The purchase price included conveyance of both tangible and intangible assets, including "wells, gathering systems, flow lines, pipelines, processing equipment, compressors, jet pumps, salt or disposal wells, leases, surface tracts, [right-of-way] agreements, [roadway] agreements, [road] use agreements. . . mineral interests, mineral servitude[s] . . . participation agreements, [and] joint operating agreements." There were liabilities conveyed to Perdido in the sale as well, the largest of which was the liability of plugging and abandoning wells. Mr. Holden testified that Perdido estimated the cost of plugging and abandoning the wells at approximately $75,000.00 per well, for a total plug and abandon liability of roughly $825,000.00. During the due

4

diligence process prior to the sale, Perdido looked into the assessments and ad valorem tax liability on the property, and Mr. Holden acknowledged that Perdido was aware that the assessments were "pretty substantial." In fact, Mr. Holden testified that part of the adjustment from the original purchase price of approximately $4,061,000.00 was for ad valorem taxes paid by Perdido on the seller's behalf. Although he explained that the substantial nature of the assessments was not a "deal-stopper" for Perdido, Mr. Holden testified that Perdido engaged a property tax consultant, Daron Fredrickson, at that time "to help us understand those values and understand those assessments." When asked whether supporting documentation was provided to the assessors regarding the liabilities and other items affecting fair market value that he addressed in his testimony, Mr. Holden testified that he provided only a copy of the purchase agreement and the appraisal prepared by Mr. Calvanico, because the assessors did not specifically request anything else.

Perdido's appraiser, Joseph Calvanico, testified as an expert witness at the LTC hearing. He was retained by Perdido in connection with the property tax appeal to perform a fair market value appraisal of the purchased property. Mr. Calvanico testified that although the property was assessed at approximately $72,000,000.00 the year prior to the sale, he estimated the fair market value of the purchased property to be $12,200,000.00. Mr. Calvanico explained that he calculated the fair market value by first calculating replacement cost new and physical depreciation according to the LTC tables, then deducting additional functional obsolescence based on depth of the wells and pipeline pressure and economic obsolescence based on the overall economy. To perform the appraisal, Mr. Calvanico used information obtained from Perdido, such as financial data, the Purchase and Sale Agreement, maps, engineering documents, communications from engineers, and other information obtained as part of the due diligence

5

process; however, he testified that this information was not provided to the assessors along with his appraisal. Mr. Calvanico testified that the methods he used in calculating obsolescence were not the methods traditionally used, and the mathematics behind his calculations, while introduced at the LTC hearing as part of an exhibit entitled "Explanation of Depreciation," was not provided to the assessors with his appraisal. Further, Mr. Calvanico did not speak to the assessors about the assessment or his appraisal and did not testify at the Board of Review hearings on the protests.

Daron Fredrickson, the tax consultant engaged by Perdido to handle tax compliance for the purchased property, also testified at the LTC hearing. Mr. Fredrickson prepared and filed the annual tax reporting forms in each parish for the purchased property. He described his procedure for preparing the tax reporting forms in this case. After preparing the forms as he normally would using the LTC rules, he then "took Mr. Calvanico's answer on his appraisal and . . . backed into the obsolescence it would take to get to the difference between what the schedule called for and what Mr. Calvanico's number was." He further explained that "[w]e had Mr. Calvanico's report, which was the number we were trying to get to, to let the assessor know [what] we were trying to ask for on the value. And so each one of those, we calculated the percentage obsolescence it would take to get from the calculated number from the [LTC] rules to Mr. Calvanico's numbers." Mr. Fredrickson confirmed that the data used by Mr. Calvanico to prepare his appraisal was not provided to him or to the assessors. He only submitted the Purchase and Sale Agreement and Mr. Calvanico's appraisal to the assessors with the tax reporting forms, along with a cover letter stating that he intended to travel to each parish to discuss the assessments and package with the assessors. He testified that he did not actually meet with any of the assessors, but someone in his office "reached out" to each of the parishes to ask whether they needed anything, and to

his knowledge, there were no questions received from the assessors' offices. Although Mr. Fredrickson prepared the tax reporting forms and offered to meet with the assessors to discuss the assessment, he testified that he could not explain how the obsolescence was calculated because he is not an appraisal expert. Mr. Fredrickson was unable to explain Mr. Calvanico's reasoning for using well depth in his calculation of obsolescence. He acknowledged that well values typically go up as well depth increases and that there is nothing in the LTC rules and regulations that calls for using depth as an obsolescence factor. Mr. Fredrickson testified that he was not suggesting that any Assessor defendant failed to correctly apply the valuation or depreciation tables for either wells or pipelines, but he believes that the Assessor defendants' valuations are incorrect because they "did not arrive at a value that matched what our expert appraiser came up with."

Rodney Kret testified on behalf of the Assessor defendants as an expert in assessment practice and procedure. He testified that he is extremely familiar with the methodology used by Louisiana tax assessors in valuing oil and gas properties. Although he was not involved in the assessment of the Perdido properties, Mr. Kret reviewed Mr. Calvanico's appraisal and the documents provided to the Assessor defendants and testified that he did not believe that the Assessor defendants were given the data needed to derive the obsolescence that was being requested by Perdido. Mr. Kret testified that he did not know what to make of Mr. Calvanico's calculations, other than that he could not duplicate them himself. In his opinion, Mr. Calvanico's methodology for calculating functional obsolescence was flawed. Specifically, Mr. Kret did not believe operating pressure was an appropriate indicator of functional obsolescence, and he had never seen well depth used as an indicator of functional obsolescence before, nor did he think it was appropriate.

Rhonda Farris, Chief Deputy Assessor for Beauregard Parish, testified that she was involved in the assessment of the Perdido property located in that parish.

Since Perdido did not own any pipeline property in Beauregard Parish, Ms. Farris explained that her office only considered a request for additional obsolescence related to wells. In assessing the property, Ms. Farris testified that she applied LTC tables, which took into account both depreciation and well depth. Perdido then sought additional obsolescence based on the depth of the wells. Ms. Farris testified that this request was considered, but ultimately rejected, because the information provided by Perdido did not support the request and because she was unable to determine how Perdido came up with the amount of obsolescence it requested. Ms. Farris acknowledged that she was contacted by someone in Mr. Fredrickson's organization regarding the request for additional obsolescence. She testified that she replied by email, requesting any additional information that the assessor's office could consider "to help with obtaining a value for Perdido," but nothing further was provided.

Deputy Assessor Cheryl Boudreaux with the Acadia Parish Assessor's Office also testified at the LTC hearing. Ms. Boudreaux was involved in the appraisal of the Perdido property in Acadia Parish, which consisted of a single well. Ms. Boudreaux testified that although she received a request from Perdido for additional reduction based on obsolescence, the calculation of obsolescence Perdido provided was not like anything she had ever used for obsolescence before, and the request was not accompanied by documentation or an explanation of what the numbers represented. Ms. Boudreaux testified that she had thirty-five years experience as an accountant, and "looking at the documentation that they tried to provide in support [of] their request for obsolescence didn't carry any weight with my experience as a numbers person." As such, the request to apply additional obsolescence to the assessment was denied.

Rapides Parish Assessor Richard I. Ducote, Jr. testified that he reviewed the request submitted to his office by Perdido, but he did not agree with its

8

calculations, so he did not allow the additional reductions for obsolescence. Mr. Ducote explained that some of the obsolescence requested by Perdido was based on factors built into the LTC tables, which were already applied in his assessment. Although Perdido sought additional reductions, Mr. Ducote explained that Perdido did not properly explain its calculations or provide documentation for its requests. For instance, Perdido sought a reduction based on well depth, which is not normally a factor in obsolescence, but did not provide any supporting documentation to show how well depth equates to functional obsolescence. Perdido also sought an obsolescence reduction for its pipelines using a formula based on operating pressure, which Mr. Ducote testified has never been used as an obsolescence factor by his office, but Perdido did not provide any documentation of operating pressure. Calvanico's appraisal also applied a seventy-five percent reduction in value based on general economic conditions, but did not explain what that number represented. Although Mr. Ducote denied the additional obsolescence requested by Perdido, he testified that he did apply some obsolescence reductions as appropriate. He applied a fifty-six percent reduction for obsolescence to the pipelines based on throughput, as he had done in other cases, and a ninety percent reduction for the shut-in wells, as provided for by the LTC tables.

Michael C. Bealer, Vernon Parish Assessor, testified that he reviewed the tax reporting forms submitted by Perdido, as well as its request for additional reductions based on obsolescence, but he denied the request because it was not adequately supported and documented. For instance, Mr. Bealer explained that Perdido requested an additional reduction for functional obsolescence beyond the obsolescence provided for in the LTC tables based on well depth, but did not explain how it alleges the well depth functionally impairs the well or what the percentage reductions requested represent.

9

After the hearing, the LTC took the matter under advisement before upholding the assessments. The LTC's Decision and Order noted that the Purchase and Sale Agreement reflected a sale of a going concern and not a simple asset purchase agreement. As such, the sale price alone, without more information and further explanation, was not indicative of the fair market value of the property. The LTC found that the sale was a valid sale under the LTC's Rules and Regulations and that genuine consideration should have been given to it. The LTC also noted that the Assessor defendants failed to give genuine consideration to the sale. Nevertheless, the LTC found that despite the fact that the Assessor defendants applied insufficient obsolescence to the subject property, Perdido "failed to submit and offer sufficient information and testimony concerning the sale for the [LTC] to determine obsolescence based on the sale." In finding that Perdido failed to provide sufficient evidence, the LTC noted that it did not find Calvanico's valuation to be reliable. Based on these findings, the LTC concluded that it had "no choice but to uphold the values determined by the [Assessor defendants] by affirming the decision."

Perdido filed separate petitions for judicial review of each of the LTC rulings in the Nineteenth Judicial District Court, requesting that the determinations of the LTC be reversed or, in the alternative, that the matter be remanded to the LTC with instructions to give due weight and consideration to the facts, documentary evidence, and witness testimony presented by Perdido. On motion of the defendants, the suits were consolidated for purposes of judicial review.[1]

---

[1] After a hearing, the district court remanded the matter to the LTC to take additional evidence of obsolescence. The Assessor defendants appealed the trial court judgment remanding the matter to the LTC. However, finding that the judgment was a nonappealable interlocutory ruling, this Court converted the consolidated appeals to applications for supervisory writs. Thereafter, this Court concluded that the district court erred in remanding the matter to the LTC to allow Perdido to present additional evidence under La. R.S. 49:964(E). As such, this Court granted the writ application, reversed the district court judgment remanding the matter to the LTC to take additional evidence, and remanded the matter to the district court for further proceedings. See *Perdido Energy Louisiana, LLC v. Acadia Parish Board of Review*, 20-0962 (La.App. 1 Cir. 3/30/21), 2021WL1207818 (unpublished writ action).

A hearing was held on the judicial review proceeding on September 22, 2021. After taking the matter under advisement, the district court affirmed the LTC's ruling, and this appeal followed. On appeal, Perdido argues that the LTC's decisions should have been reversed as arbitrary and capricious and not supported and sustainable by a preponderance of the evidence for failure of the assessors to grant any obsolescence on the value of the property.

## DISCUSSION

Louisiana Constitution article VII, § 18(E) provides that the correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the LTC or its successor, and finally by the courts, all in accordance with procedures established by law. See La. R.S. 47:1931; 47:1992; 47:1989; 47:1998. Louisiana Revised Statutes 47:1998 authorizes judicial review of the correctness of a tax assessment, and the Administrative Procedure Act, specifically La. R.S. 49:964(F) and (G), governs the extent of that review. La. R.S. 49:967(A); *D90 Energy, LLC v. Jefferson Davis Parish Board of Review*, 20-00200, pp. 8-9 (La. 10/20/20), 341 So.3d 492, 498-99. When reviewing a final decision of an agency, the district court functions as an appellate court. *Regency Intrastate Gas, LLC v. Louisiana Tax Commission*, 21-0271, p. 4 (La.App. 1 Cir. 9/27/21), 329 So.3d 838, 842, *writ denied*, 21-01559 (La. 1/19/22), 331 So.3d 320. An aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate court of appeal. La. R.S. 49:965.

On review of a district court judgment rendered under La. R.S. 49:965, the appellate court owes no deference to the district court's factual findings or legal conclusions. *Regency Intrastate Gas, LLC*, 21-0271 at p. 6, 329 So.3d at 844. Rather, the appellate court conducts its own independent review of the administrative record and reviews the administrative agency's decision and findings using the standards set forth in La. R.S. 49:964(G). *Id.* Thus, we may

11

affirm or remand the agency decision for further proceedings. We may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusion, or decisions are: in violation of constitutional or statutory provisions; in excess of the agency's statutory authority; made upon unlawful procedure; affected by other error of law; arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion; or not supported by a preponderance of the evidence. La. R.S. 49:964(G)(l)-(6). This Court shall make its own factual determinations by a preponderance of the evidence based on its own evaluation of the record reviewed in its entirety upon judicial review. La. R.S. 49:964(G)(6). In conducting this review, however, this Court affords considerable weight to an administrative agency's construction and interpretation of its rules and regulations, and the agency's construction and interpretation should control unless found to be arbitrary, capricious, or manifestly contrary to its rules and regulations. *Regency Intrastate Gas, LLC*, 21-0271 at p. 6, 329 So.3d at 844. Further, this Court shall give due regard to the administrative agency's determinations regarding witness credibility, where the agency had first-hand observation of a witness's credibility on the witness stand. La. R.S. 49:964(G)(6).

Each assessor is charged with the responsibility of determining the fair market value of all property subject to taxation within his parish or district at intervals of not more than four years. Fair market value is determined in accordance with criteria established by law and applied uniformly throughout the state. La. Const. art. VII, § 18(D). Fair market value is the price for property that would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money that property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying

12

with knowledge of all uses and purposes to which the property is best adapted and for which it can be legally used. La. R.S. 47:2321; LAC 61:V.109. To ensure uniformity, the LTC has adopted guidelines, procedures, rules, and regulations, which each assessor shall follow in determining fair market value. La. R.S. 47:2323(A) and (B). Louisiana Administrative Code Title 61, Pt. V, Chapter 13 contains the "Guidelines for Ascertaining the Fair Market Value of Pipelines." LAC 61:V.1301.

Here, the parties do not dispute that the subject pipeline property is valued using a cost approach based on schedules found in LAC 61:V.1307. See LAC 61:V.1301(A). In using the cost approach, the assessor values the property by estimating the replacement or reproduction cost of the improvements and then deducting the estimated depreciation. La. R.S. 47:2323(C)(2); LAC 61:V.1301(A)(2). The assessor shall also consider functional and/or economic obsolescence in the fair market value analysis, as substantiated by the taxpayer in writing. LAC 61:V.1301(A)(2); LAC 61:V.1305(F).

Although La. R.S. 47:2324 requires the assessor to gather all data necessary to properly determine fair market value of property in his jurisdiction, it is the party seeking a fair market value reduction for its pipeline property based on obsolescence who has the burden of producing sufficient data and information to substantiate its claim. *Regency Intrastate Gas, LLC*, 21-0271 at p. 7, 329 So.3d at 845. The assessor retains the discretion to determine whether the taxpayer has substantiated the obsolescence. *ANR Pipeline Co. v. ANR Pipeline Co.*, 11-379, p. 8 (La.App. 3 Cir. 8/10/11), 73 So.3d 398, 403. Consistent with La. R.S. 47:1957, the assessor may request additional documentation when ascertaining the fair market value of pipeline property. LAC 61:V.1301(A)(2).

The dispute in this case involves the Assessor defendants' rejection of Perdido's request for additional reductions in its property's fair market value based

on obsolescence. In support of its request, Perdido provided the Assessor defendants with a copy of the Purchase and Sale Agreement and Calvanico's appraisal, but not the data forming the basis for the appraisal or an explanation of the methodology or calculations, despite the fact that the burden was on Perdido to produce sufficient data and information to substantiate its claim.

Based on our review of the administrative record, and giving due regard to the LTC's interpretation of its rules and to its witness credibility determinations, we conclude Perdido failed to carry its burden of proving entitlement to a fair market value reduction for its property based on obsolescence for the 2018 tax year. See *Regency Intrastate Gas, LLC*, 21-0271 at p. 11, 329 So.3d at 847. We find no basis in La. R.S. 49:964(G) requiring reversal of the LTC's decisions in these consolidated appeals. The LTC's decisions are legally supported by applicable statutory and administrative authority and are factually supported by the record evidence.

## CONCLUSION

For the reasons set forth herein, we affirm the district court's judgment on judicial review. Costs of this appeal are assessed to plaintiff, Perdido Energy Louisiana, LLC.

**AFFIRMED.**

14

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2022 CA 0115

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## ACADIA PARISH BOARD OF REVIEW; JAMES J. PETITJEAN, IN HIS CAPACITY AS ASSESSOR FOR ACADIA PARISH; AND THE LOUISIANA TAX COMMISSION

*CONSOLIDATED WITH*

## 2022 CA 0116

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## EVANGELINE PARISH BOARD OF REVIEW; DIRK DEVILLE, IN HIS CAPACITY AS ASSESSOR FOR EVANGELINE PARISH; AND THE LOUISIANA TAX COMMISSION

*CONSOLIDATED WITH*

## 2022 CA 0117

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## BEAUREGARD PARISH BOARD OF REVIEW; BRENT RUTHERFORD, IN HIS CAPACITY AS ASSESSOR FOR BEAUREGARD PARISH; AND THE LOUISIANA TAX COMMISSION

*CONSOLIDATED WITH*

## 2022 CA 0118

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## RAPIDES PARISH BOARD OF REVIEW; RICHARD I. DUCOTE, IN HIS CAPACITY AS ASSESSOR FOR RAPIDES PARISH; AND THE LOUISIANA TAX COMMISSION

*CONSOLIDATED WITH*

# 2022 CA 0119

## PERDIDO ENERGY LOUISIANA, LLC

### VERSUS

## VERNON PARISH BOARD OF REVIEW; MICHAEL C. BEALER, IN HIS CAPACITY AS ASSESSOR FOR VERNON PARISH; AND THE LOUISIANA TAX COMMISSION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., dissents.**

Louisiana Revised Statutes 47:2324 requires the assessor to gather all data necessary to properly determine fair market value of property in his jurisdiction. **Regency Intrastate Gas, LLC v. Louisiana Tax Commission**, 2021-0271 (La.App. 1 Cir. 9/27/21), writ denied, 2021-01559 (La. 1/19/22), 331 So.3d 320. However, the taxpayer seeking obsolescence has the burden of producing sufficient data and information to substantiate its claim. **Id.**

In this matter, the Louisiana Tax Commission found that the parish assessors failed to give genuine consideration to the sale and that the evidence submitted by Perdido suggested that insufficient obsolescence was applied to the subject property. Nevertheless, the tax commission determined that Perdido failed to offer sufficient evidence to determine and quantify the obsolescence.[1] In **D90 Energy, LLC v. Jefferson Davis Parish Board of Review**, 2020-00200 (La. 10/20/2020), 341 So.3d 492, 497-98, the Louisiana Supreme Court recognized the tax commission's authority to receive and consider evidence not previously submitted to the assessor. Accordingly, with the tenets of fair play in mind and based on the specific facts of this case, I respectfully dissent.

---

[1] I note that after requesting the obsolescence, Perdido reached out to each of the assessors to ask whether they needed additional information. Only one assessor's office responded, by email, asking for any additional information "to help with obtaining a value for Perdido."

2